## THE CITY OF OSAGE CITY *et al.* v. MARGARET LARKIN.

1. ALLEY, *Open for Public Use.* Where the alleys of a city have been dedicated to the public, no further action is required by the city to open them for public use.

2. —————— *Practically Impassable, Yet an Alley.* An alley retains its character as an alley, although the lots on both sides thereof are owned by one person, and is so intersected by a railroad as to make it practically impassable.

3. DANGEROUS MACHINERY *in an Alley — Liability for Personal Injuries.* Where a dangerous piece of machinery is placed in an alley by the owner of abutting lots, and is allowed to remain for years, both the individual and the corporation are guilty of negligence, and both are liable for injuries sustained by a child under nine years who was hurt upon such machinery.

### *Error from Osage District Court.*

ACTION by *Margaret Larkin,* a minor, by her next friend, Peter Larkin, against *The City of Osage City* and Asher Adams, to recover damages for personal injuries. On the 24th day of August, 1883, plaintiff received the injury for which this action was brought. She was on her way from her father's house in Osage city in an adjoining block, to pick up cobs and coal alongside the track of the A. T. & S. F. railroad, near the elevator of *Adams,* one of the defendants. She carried a sack in which to gather the cobs and coal, one end of which was wound around her arm, and was swinging it to and fro when she passed over the tumbling-rod of defendant *Adams.* In some way the sack was caught upon this rod and she was thrown down upon it and her left arm was broken and terribly crushed, her thumb broken on her right hand, her right arm sustained a fracture termed a "green-stick" fracture, and she was otherwise cut, lacerated and bruised. Her left arm was amputated near the shoulder, and her right thumb near the hand; otherwise she sustained no permanent or constitutional injury. At the time of the accident she was nearly nine years old. The place where she received the injury was an alley in the city of Osage City. The block through which this alley ran was cut into two unequal parts by the right-of-way of the Santa Fé railroad entering at the southeast corner of the block and extending through it in a northwesterly direction. The main track and two side-tracks were on the right-of-way. The road-beds were separated and each raised about two and a half or three feet above the ordi-

nary level of the ground, and no crossings had been made where the tracks crossed the alley. The length of the alley from the road-bed eastward to the street was sixty-five feet. There were no sidewalks on the south and east sides of this tract. All the block east of the railroad was owned by Adams, and uninclosed, except a fence around a small pond of water on Adams's land; the water in the pond was used in running the engine at the elevator. The elevator of Adams was on the south side of the alley, and the hay-press just opposite on the north side; the machinery of the hay-press was connected with the engine of the elevator by this tumbling-rod. In driving the teams to the elevator they passed over a portion of this block, and a part of the raised way leading into the elevator was extended into the alley. A part of the rod was covered by this raised way. After it came out of the raised way it was not cased or boxed. On the trial at the June term, 1886, a verdict and judgment thereon was rendered for plaintiff for $4,000 against the city of Osage City and Asher Adams. They both seek to have the judgment reviewed in this court.

*A. J. Utley*, and *F. H. Connelly*, for plaintiff in error Osage City; *Thomson & Heizer*, for plaintiff in error Asher Adams.

*H. B. Hughbanks*, and *B. F. Hendrix*, for defendant in error.

Opinion by HOLT, C.: Both of the defendants allege several errors at the trial. We will premise this opinion by stating that under the facts in the case as shown by the record, if the city is liable by reason of its negligence in permitting the tumbling-rod of defendant Adams to remain as an obstruction in an alley, then he would also be liable. Of the many assignments of error, the only ones we care to notice are those referring to the rulings upon the admission and rejection of evidence, and the instructions to the jury relating to the question whether the place where the little girl was hurt was in fact an alley in the city of Osage City which the public had the right to use. The filing and recording of the plat of the

**1. Alley, open for public use.** city, duly made, acknowledged and certified, without further action on the part of the city made this parcel of land an alley, and vested the fee in the county for public use. The defendants argue that although it might be an alley, yet the city had never attempted to open and improve it or mark its boundaries, and therefore that they are not liable for injuries that occurred in traveling over it. They claim that until a city attempts to make streets or alleys suitable for public travel, and thus invites the public to use them, it is not liable for injuries upon such unimproved or unopened streets or alleys; and further, that when it does improve them, it is only compelled to improve those parts of the street or alley which are necessary for traveling; and they cite a list of authorities to sustain their contention. They claim that in this instance one of the defendants, Asher Adams, owned the land on both sides of this alley; that it was obstructed by the road-beds of the A. T. & S. F. railroad so as to render it practically impassable for general travel, and therefore it was used solely for his own benefit as a means of ingress to and egress from his elevator and hay-press, and as he never fenced it or laid it off, but used it indiscriminately with the other part of the block south of the railroad, it never acquired the public character usually given alleys.

They claim further that a city is not under the same obligations to open and improve an alley that it is a street; that the object and purpose of a street is for the general travel of the public, while an alley is used primarily for the convenience of the abutting land-owners, and when the land abutting an alley is all owned by one individual, he has the right to obstruct the same and use it as his own property; and they cite a list of Michigan authorities referring to alleys in the city of Detroit.

We cannot agree with the claim of defendants, nor do we believe that the authorities they cite sustain the propositions advanced. Alleys in the city of Detroit were not dedicated in the way that alleys are in Kansas. The dedication of an alley in this state has the same force and is in the same terms

14 — 40 KAS.

as the dedication of a street. It may be, and probably is a fact, that the interests of the public do not require that an alley should be kept in the same condition as a street, and it is probably true that alleys are largely used for the convenience of the abutting lot-owners, and certainly have less use as a public thoroughfare than the streets in a city, yet they are dedicated to public use; public money may be expended upon them to improve them, and they can be used by the public generally; the abutting lot-owners have no such control over them as to exclude the general public from their enjoyment, and an accident happening in an alley used for public travel occasioned by an obstruction therein, may make the city liable for the injury so sustained.

2. Practically impassable, yet an alley.

In this instance it is claimed that this alley was not publicly and formally opened. Our statute does not require any formal opening of a street or alley where there has been a dedication; the simple fact of dedication makes it a public way. It is claimed, however, that until there is some work done to invite the public to travel over a street or alley, the traveler uses the street or alley at his own peril. We think that contention, whether sound or not, has no bearing on this case. The testimony shows that this portion of this alley was comparatively smooth ground, and that this obstruction was not one that existed from the natural formation of the land, but was placed there by the defendant Adams, and allowed to remain for years with the knowledge of the city of Osage City. It was a dangerous obstruction placed upon an alley dedicated to the public, and while it would not probably have been permitted to remain on a public street or alley which was in constant use by the public as a thoroughfare, yet it was upon public ground on which the public had the right to travel. It is this particular fact in the case that makes the authorities cited by the defendant inapplicable.

It was not the failure of the city to open the alley and keep it in repair that the plaintiff complains of as causing the injury sustained, but it was its negligence in allowing this trap to remain for so long a time in an alley dedicated to the public,

and over which any person had the right to travel. This child, under nine years of age, did not sustain the injury complained of by reason of the natural roughness and unevenness of the ground, but by falling upon a dangerous piece of machinery which had been permitted to remain uncased and unprotected for years in an alley of this city. This action was tried upon this theory, and the instructions given and rulings upon the introduction and rejection of evidence were all consistent with it. This was correct. We find no material error in the trial of this case, and recommend that the judgment be affirmed.

*3. Dangerous machinery in an alley—liability for personal injuries.*

By the Court: It is so ordered.

All the Justices concurring.