C. B. DAUGHTERS, *Appellant, v.* THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RILEY *et al., Appellees.*

No. 16,288.

SYLLABUS BY THE COURT.

DEDICATION OF LAND—*Public Use—Particular Use not Designated—Legislative Designation.* Where the proprietors of a town site, in the recorded plat thereof, designate a block of land simply as "Square," this designation is sufficient to indicate an intention to dedicate the block to a public use, but is insufficient to designate any particular public use. The legislature so far represents the public that it may by a proper act designate and determine to what particular public use such block shall be devoted, if no private rights have intervened.

Daughters v. Riley County.

Appeal from Riley district court; SAM KIMBLE, judge. Opinion filed January 8, 1910. Affirmed.

### STATEMENT.

IN July, 1857, the Manhattan Town Site Association located and platted the site of the city of Manhattan, embracing about 1280 acres. At several places on the town site blocks were left not divided into lots, one of which was marked "Market Square," one "Schoolhouse Square," and one simply "Square." The latter is in the first ward and is the one concerning which this action is brought. Lots were sold abutting on the streets surrounding this square, and valuable buildings, principally residences, were erected thereon. It is not alleged, however, whether any of the abutting lots were sold or buildings erected thereon prior to the act of the legislature hereinafter referred to. But in November, 1903, the appellant became the owner of two lots facing this square, upon which there was a dwelling estimated at the value of $6000, which he has ever since occupied as a residence. The residence and improvements thereon were erected in 1890.

The legislature of 1867 passed an act vacating the square for a courthouse site. (Laws 1867, ch. 163.) During the same year the board of county commissioners of the county took possession of the square and erected thereon a building which for several years was used in part for a courthouse and in part for a jail. It has been continuously used as a jail by the county ever since that time. Since the year 1889 the court has been held elsewhere than in this building, and in 1907 a new site was procured and a courthouse erected thereon by the county, in which court has ever since been held.

In 1907, after the completion and occupancy of the new courthouse by the county, the appellant brought this action to abate the buildings, etc., on the square as a nuisance. In his petition, after detailing the facts

above abstracted, he sets forth his grievance and prayer for relief as follows:

"The plaintiff further says that notwithstanding the premises the said board of county commissioners have continued to maintain a county jail and jailer's residence in the building erected thereon by said county upon said square, wherein prisoners are kept by the sheriff of said county, and maintain a rock pile ,upon said square, where such county prisoners are required to break stone, and further that said commissioners have erected a horse barn upon said square, where horses are kept by the sheriff and jailer of said county, and they have erected thereon other outbuildings which they continue to maintain in connection with said jail, and have also for several years kept a broken and tumble-down post-and-board fence around said square, to the exclusion of all the people of said city and of the plaintiff to use said square in the manner intended by its dedication as public grounds, and further that the sheriff and jailer of said county are permitted by said board of commissioners to use said square as a corral for a large number of horses, and said defendants have caused to be destroyed upon said square a large number of valuable shade trees, and they have caused to be accumulated large piles of manure, old bridge lumber and other rubbish upon said square. That said jail building so maintained, and all other buildings heretofore mentioned as erected and maintained upon said square, are roughly constructed, out of repair and unsightly. That all buildings and fences so maintained by said defendants on said square are dilapidated and unsightly. That said defendants threaten and intend to continue the occupation and use of said square as above set out, to the great and irreparable damage of this plaintiff and all the residents and property owners immediately surrounding said square.

"Plaintiff alleges further that the said act of the legislature attempting to vacate said square for the purpose of a courthouse site for said county was without right, null and void, and gave said county no legal right to occupy said square for jail or any other purposes, and that if said county has ever secured any license or right whatever to ever occupy said square for jail purposes or courthouse purposes by sufferance of

the people of said city, and especially of the property owners about said square, or any laches on their part, the same has been forfeited by the abandonment of said square as a courthouse site as aforesaid. Plaintiff further alleges that all the acts of said defendants and each of them in the occupation and uses of said square as herein set out are wholly unlawful, wrongful, and if allowed or permitted to be continued, will work a great and irreparable damage to plaintiff and all other abutting lot owners about said square. Plaintiff further alleges that he brings this action especially on his own behalf, but also on behalf of all the said owners and occupants of lots immediately surrounding and abutting upon said square, and that they have no adequate remedy at law. Wherefore plaintiff prays that said court grant a temporary injunction against each and all the defendants, prohibiting and restraining them from doing any and all the wrongful acts complained of herein, and that upon the final hearing hereof that each and all the defendants be enjoined and forever barred from all the wrongful acts herein complained of, and that the temporary injunction be made permanent, and a further judgment that all the buildings, fences, etc., so unlawfully constructed and maintained, be removed, and that plaintiff be granted such further relief as he may in equity be entitled to, and that he recover his costs herein."

To this petition the defendants filed a general demurrer, which was sustained by the court, and, the plaintiff electing to stand thereon, judgment was rendered against him for costs, from which judgment he appeals.

*C. B. Daughters,* and *R. J. Brock,* for the appellant.
*John E. Hessin,* for the appellees.

The opinion of the court was delivered by

Smith, J.: The designating of the block simply as "Square" evidences an intention on the part of the owners of the land to dedicate it to a public use, but the designation does not indicate to what particular public

use it was dedicated. It was simply dedicated to the use of the public. As we have seen, it does not appear from the petition that any private rights in the lots surrounding the square had intervened, and it was decided in *Comm'rs of Franklin Co. v. Lathrop*, 9 Kan. 453, that "the legislature so far represents the public that its consent to the alienation of public grounds thus dedicated is sufficient, if no private rights have intervened." (Syllabus.) In that case the block therein in question was designated by the proprietors on the plat as "Courthouse Square." The block was also conveyed by the Ottawa Town Company to the board of county commissioners of Franklin county. Thereafter the legislature, by chapter 85 of the Laws of 1871, authorized the board of county commissioners to sell one-half of the block, the proceeds of the sale to be devoted to the construction of a courthouse. Under the facts of that case, however, the court held that Lathrop had a trust interest in the property, and held the act of the legislature unconstitutional, at the same time announcing the general doctrine above quoted, which is applicable to this case. (See, also, *Palmer v. City of Clinton*, 52 Ill. App. 67; *Requa v. The City of Rochester*, 45 N. Y. 129; *Depriest v. Jones*, [Va. 1895] 21 S. E. 478; *Taylor & als' Case*, 29 Grat. [Va.] 780.) Even if lots surrounding this square were purchased and occupied before the legislature passed the act of 1867, it can not be said that they were bought or the property improved with reference to any particular public use of the block in question, as no particular public use was designated by the plat.

The appellant especially appears to be in no position to complain. He purchased his property upon which he bases his right thirty-six years after the courthouse and jail were built, and four years after the county had ceased to use the building as a courthouse. His grantor erected the house he now owns after the building on

the square had ceased to be used as a courthouse. If the grantor had commenced an action like this at the time he conveyed the property to the appellant, it seems it would have been a sufficient answer to his attempt to invoke the powers of a court of equity that he had slept upon his rights, if he had any, for thirteen years, and was guilty of laches.

Many other questions are raised, but in our view the questions discussed are sufficient to justify the ruling of the court in sustaining the demurrer. The judgment is therefore affirmed.